## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STUART MINTZ, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 12-6719 |
| | : | |
| UPPER MOUNT BETHEL | : | |
| TOWNSHIP, et al., | : | |
| Defendants. | : | |

### M E M O R A N D U M

**STENGEL, J.**                                            **June 19, 2013**

Stuart and Paula Mintz (collectively, Plaintiffs) bring this nine-count action against North Bangor Fire Company, Upper Mount Bethel Township, and various individual officials.  Plaintiffs seek damages and an injunction stemming from a July 10, 2010, motor vehicle accident in which Mr. Mintz sustained serious injuries.  Before me are two motions to partially dismiss the complaint, the first filed by North Bangor Fire Company (Company), Fire Chief Frederick Farleigh, and Fire Company President Christopher Louszko, and the second filed by Upper Mount Bethel Township (Township) and Chairman of the Board of Supervisors Edward Nelson (collectively, Moving Defendants).  The remaining defendant, Assistant Fire Chief Zachary Romano, answered.  For the following reasons, I will grant the motion in part and deny it in part.

### I.       BACKGROUND

Plaintiffs set forth the following facts in their complaint, which I accept as true for the purpose of the instant motions.  Mr. Mintz was a member of the North Bangor Fire Company in Upper Mount Bethel Township.  Compl. ¶ 10.  On July 10, 2010, Mr. Mintz

reported to the fire hall to perform equipment maintenance.  Id. ¶ 20.  Mr. Romano, the assistant fire chief, was present and directing the activities of Mr. Mintz and other North Bangor firefighters.  Id. ¶ 21.  Mr. Romano, who was at the time only twenty years old, was also drinking alcohol.  Id. ¶¶ 22, 42.  Mr. Romano directed everyone prepare for the Tatamy Fireman's Parade, which involved a parade of fire trucks and a celebration at the Tatamy Fire Hall, some thirteen miles from North Bangor Fire Company.  Id. ¶¶ 23, 29-30.  Mr. Romano determined which fire trucks were to be taken and who was going to drive them.  Id. ¶ 24.  Mr. Romano directed Mr. Mintz to travel with him in a tanker truck.  Id. ¶ 25.

Mr. Romano stopped to purchase beer on the way to the parade.  Id. ¶ 26.  Mr. Romano consumed alcohol while driving the tanker truck to and during the parade, and also at the post-parade celebration.  Id. ¶¶ 27, 35, 40-41.  Following the celebration, Mr. Romano ordered Mr. Mintz and all other North Bangor firefighters present to return to North Bangor Fire Company in their assigned trucks.  Id. ¶ 45.  Mr. Mintz returned to the tanker truck driven by Mr. Romano.  Id. ¶ 46.  Mr. Romano lost control of the tanker truck roughly three miles from Tatamy Fire Hall while attempting to navigate a turn.  The tanker truck flipped on its side, coming to rest on the shoulder.  Id. ¶¶ 48-49.  Mr. Mintz suffered serious injuries in the crash.  Id. ¶ 51.

## II.     STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The factual allegations must be sufficient to make the claim for relief more than just

speculative.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "[C]onclusory or 'bare-bones' allegations will no[t] . . . survive a motion to dismiss."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

My inquiry at the motion to dismiss stage is two-fold.  First, I must separate the factual and legal elements of each claim.  I "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Fowler, 578 U.S. at 210-11.  And second, I must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  Id. (quoting Iqbal, 556 U.S. at 679).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.   DISCUSSION

Plaintiffs allege nine counts: by Plaintiffs, for deprivation of "various Federal Constitutional Rights" pursuant to 42 U.S.C. § 1983,[1] against all defendants (Count I); by

---

[1] "Section 1983 authorizes a person to file a private cause of action against state actors for a deprivation of rights protected by a federal statute or the United States Constitution."  Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002).

Plaintiffs, for deprivation of Fourth and Fourteenth Amendment rights pursuant to §

1983, against all defendants (Count II); by Plaintiffs, for supervisory liability pursuant to

§ 1983, against all individual defendants (Count III); by Plaintiffs, for municipal liability

pursuant to § 1983, against Company and Township (Count IV); by Plaintiffs, for

deprivation of rights under Article 1, Section 1 of the Pennsylvania Constitution, against

all defendants (Count V); by Plaintiffs, for state-created danger pursuant to § 1983,

against all defendants (Count VI); by Mr. Mintz, for state-law negligence, against Mr.

Romano (Count VII); by Mr. Mintz, for state-law respondeat superior, against Company

and Township (Count VIII); and by Mrs. Mintz, for state-law loss of consortium, against

all defendants (Count IX).

Township and Mr. Nelson move to do dismiss all claims against them.[2]  Company,

Mr. Farleigh, and Mr. Louszko move to dismiss Mrs. Mintz's § 1983 claim for loss of

consortium[3] and Counts I, II, and V.

### A.    Count I

Plaintiffs allege in Count I that "Defendants deprived [Mr. Mintz] of various

Federal Constitutional Rights."  Compl. ¶ 63.  Moving Defendants contend that, by not

specifying which constitutional rights Mr. Mintz was allegedly deprived, Plaintiffs

effectively present a stand-alone § 1983 claim that must be dismissed.  Kaucher v. Cnty.

of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) ("[Section 1983] does not, by its own terms,

---

[2] Township and Mr. Nelson also "adopt and join in the motion of [Company, Mr. Farleigh, and Mr. Louszko] generally."  Doc. No. 8-2 at 13.

[3] Company, Mr. Farleigh, and Mr. Louszko apparently read this claim in Counts I, II, III, IV, and VI—the constitutional claims—based on the use of the phrase "Plaintiffs," although "loss of consortium" never appears there.  Plaintiffs do not dispute this characterization.

4

create substantive rights.").  I do not reach this issue, since Plaintiffs make clear in their response that the "various Federal Constitutional Rights" they refer to are those under the Fourth and Fourteenth Amendments alleged in Counts II–IV and VI.  Doc. No. 13-2 at 15.  Because Count I is merely duplicative of those counts, it is dismissed with prejudice. Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 626-27 (E.D. Pa. 2010) (dismissing count that was "nothing more than a duplication" of another count).

### B.      Counts II, III, and IV

As indicated, Plaintiffs assert Fourth and Fourteenth Amendment claims against Mr. Romano directly in Count II;[4] against Mr. Farleigh, Mr. Louszko, and Mr. Nelson on the basis of supervisory liability in Count III;[5] and against Company and Township on the basis of municipal liability in Count IV.  Because supervisory and municipal liability necessarily depends on the existence of an underlying constitutional violation, Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010); Munoz v. City of Union City, 481 F. App'x 754, 760 (3d Cir. 2012), I first address whether Plaintiffs have plausibly alleged Fourth and Fourteenth Amendment claims against Mr. Romano, the underlying active tortfeasor.[6]

---

[4] Count II is dismissed with prejudice as to Moving Defendants.  Mr. Romano is the only defendant alleged to have actively violated Mr. Mintz's constitutional rights.  The bases for liability against Moving Defendants are set out in Counts III and IV.

[5] Count III is dismissed with prejudice as to Mr. Romano.  As the underlying active tortfeasor, Mr. Romano obviously cannot be liable for failing to adequately supervise himself.

[6] "The threshold requirement of a claim brought under § 1983 is that 'the alleged [constitutional] deprivation was committed by a person acting under color of state law.'"  Watson v. Methacton Sch. Dist., 513 F. Supp. 2d 360, 369 (E.D. Pa. 2007) (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir.1995)).  All the defendants in this matter are alleged to have acted under color of law.  Compl. ¶¶ 3-8.  Moving Defendants do not dispute this allegation, and as indicated, Mr. Romano did not move to dismiss.

### 1.    Fourth Amendment

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated."  Moving Defendants contend that Count II must be dismissed because Plaintiffs allege neither an unlawful search nor an unlawful seizure.  Plaintiffs counter that they have plausibly alleged an unlawful seizure because "there has clearly been a 'termination of freedom of movement' in this matter."  Doc. No. 13-2 at 16 (quoting Brower v. Cnty. of Inyo, 489 U.S. 593, 597 (1989)).  "The seizure," Plaintiffs argue, "is the denial of freedom of movement to [Mr. Mintz] via the significant injuries he suffered in the accident."  Doc. No. 13-2 at 17.  I am not persuaded.

The Fourth Amendment does not reach every injurious consequence of state action.  Irick v. City of Philadelphia, CIV.A. 07-0013, 2008 WL 2120171, at *5 (E.D. Pa. May 20, 2008).  "For example, if a police officer fires his gun at a fleeing robbery suspect and the bullet inadvertently strikes an innocent bystander, there has been no Fourth Amendment seizure[,]" although there has certainly been injury.  Berg v. Cnty. of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000).  Rather, a Fourth Amendment seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied*."  Brower, 489 U.S. at 597.  For this reason, "[n]egligent, accidental, or unintentional conduct that has the coincidental effect of producing a seizure will not substantiate" a Fourth Amendment claim.  Brice v. City of York, 528 F. Supp. 2d 504, 510 (M.D. Pa. 2007).

Here, there is no allegation—nor would one make any sense—that Mr. Romano

6

intentionally crashed the tanker truck *he was driving* in an effort to seize his passenger, Mr. Mintz.  Plaintiffs effectively concede this point throughout their complaint, e.g., Compl. ¶ 48 ("Assistant Fire Chief Romano *negligently, carelessly, and with deliberate indifference* to the safety of the plaintiff drove the fire truck . . . .") (emphasis added), and they cannot advance their Fourth Amendment claim by pointing only to Mr. Mintz's injuries.  Counts III and IV are therefore dismissed without prejudice as to Moving Defendants insofar as Plaintiffs have failed to plausibly allege the existence of an underlying Fourth Amendment violation by Mr. Romano.

### 2.    Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment provides in relevant part that "[n]o state shall . . . deprive any person of life, liberty, property, without due process of law . . . ."  This provision has long been held "to 'guarante[e] more than fair process' and to cover a substantive sphere as well."  Cnty. of Sacramento v. Lewis, 523 U.S. 833, 840 (1998) (quoting Washington v. Glucksberg, 521 U.S. 702, 719 (1997)).  "The substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'"  Lewis, 523 U.S. at 847 (quoting Collins v. Harker Heights, 503 U.S. 115, 128 (1992)); see also Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir. 1999) ("To generate liability, executive action must be so ill-conceived or malicious that it 'shocks the conscience.'").  Accordingly, "[t]o establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the

7

conscience." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008).

Because Mr. Romano did not move to dismiss, and Moving Defendants do not convincingly dispute the existence of an underlying violation,[7] I assume Plaintiffs have plausibly alleged a substantive due process violation by Mr. Romano, the active tortfeasor.  I therefore move to whether Plaintiffs have plausibly stated claims of supervisory and municipal liability against Mr. Nelson and Township.

### i.    Municipal Liability of Township[8]

The parties agree that to prevail against Township under § 1983, Plaintiffs must show that their injury was proximately caused by a municipal policy or custom.  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978); Bielevicz v. Dubinon, 915 F.2d 845, 850-51 (3d Cir. 1990).  Plaintiffs allege Township "polic[ies] and/or custom[s]" of failing to adequately screen, failing to adopt needed policies, and failing to adequately train, supervise, and discipline, all of which "result[ed] in volunteer firefighters operating vehicles after consuming alcohol."  Compl. ¶¶ 11-13, 75-89.

---

[7] I have already dismissed Count II as to Moving Defendants.  To the extent Moving Defendants dispute the existence of an underlying violation by Mr. Romano, their briefs are entirely insufficient.  Unlike Plaintiffs' Fourth Amendment claims, Moving Defendants advance no specific reason why Plaintiffs' Fourteenth Amendment claims should be dismissed for want of an underlying violation.  Moving Defendants merely outline the different standards for finding conscience-shocking behavior and, without elaboration, "respectfully submit[] that Plaintiffs have failed to allege sufficient conduct . . . to substantiate a cause of action under the Fourteenth Amendment." Doc. No. 6-2 at 7-8.  I therefore assume Plaintiffs have plausibly alleged an underlying substantive due process violation by Mr. Romano.

[8] As indicated, Company does not move to dismiss, at least as to Mr. Mintz, the municipality liability claim against it in Count IV.  Typically, a municipal department cannot be sued alongside a municipality under § 1983, since the former is treated as "an administrative arm of the municipality itself." Hernandez v. Borough of Palisades Park Police Dep't, 58 F. App'x 909, 912 (3d Cir. 2003); see also Benjamin v. E. Orange Police Dep't, 2:12-CV-00774 WJM, 2013 WL 1314418, at *3 (D.N.J. Mar. 28, 2013).  Company's relationship to Township is not entirely clear from the complaint, however.  Compl. ¶¶ 7-9 (alleging that Company is authorized "to respond to fire emergencies . . . in Upper Mount Bethel Township" and that "Township has control over the funding, management, operation, and duties of [Company]").  Because Company does not move to dismiss this claim, I express no opinion at this time whether Company is a municipal entity apart from Township that may sued under § 1983.

"Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).  Plaintiffs identify in their complaint only one Township official: Mr. Nelson.  Compl. ¶ 6.  Although Plaintiffs refer throughout to "polic[ies] and/or custom[s]" of the Township, they identify no "official proclamation, policy, or edict" by Mr. Nelson, much less one that proximately caused their injuries.  Even if they had, Mr. Nelson is neither alleged to possess, nor does he appear to possess, "*final* decisionmaking authority." City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (emphasis added).  Township is authorized to conduct business only through an "affirmative vote of a majority of the entire board of supervisors," 53 Pa. Stat. Ann. § 65603, and the board is not alleged to have delegated authority to Mr. Nelson to speak on its behalf, LaVerdure v. Cnty. of Montgomery, 324 F.3d 123, 125-26 (3d Cir. 2003), or to have promulgated an official policy itself.  Plaintiffs have not plausibly alleged the existence of a municipal policy, and this portion of their complaint is dismissed without prejudice.

"Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as to virtually constitute law." Bielevicz, 915 F.2d at 850.  To prevail under this theory generally, Plaintiffs must show that an unlawful custom existed and that a policymaker knew of and acquiesced in it with deliberate indifference to its known or obvious consequences. Id. at 854; Hernandez v. Borough of Palisades Park Police Dep't,

58 F. App'x 909, 912 (3d Cir. 2003).  Knowledge may be imputed to municipal policymakers where a custom is so widespread that they should have known of it. Bielevicz, 915 F.2d at 850; Hernandez, 58 F. App'x 909 at 13.  Plaintiffs' custom-based Monell allegations, thin as they are, warrant discovery.  Suffice it to say at this early stage that Plaintiffs have alleged a rampant practice of on-duty alcohol abuse, including drunk driving, by Company firefighters, Compl. ¶ 11, to which Township and Mr. Nelson, in their collective role as manager of Company's affairs, id. ¶¶ 6, 9, turned a blind eye, id. ¶¶ 12-13.  While I share Township's concerns regarding the viability of these claims, I find they are more appropriately addressed on a full record.  Plaintiffs' policy-based Monell claims against Township are therefore dismissed without prejudice, but Count IV otherwise survives.[9]

### ii.    Supervisory Liability of Mr. Nelson

To hold Mr. Nelson liable, in his individual capacity,[10] as Mr. Romano's supervisor, Plaintiffs must show that Mr. Nelson either (1) "established and maintained a policy, practice or custom which directly caused [the] constitutional harm"; or (2) "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."

---

[9] Township also moves to dismiss Plaintiffs' claim for punitive damages.  Plaintiffs concede in their response that City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981), bars their claim for punitive damages against the Township. Id. at 271 ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983."). That portion of the complaint therefore dismissed with prejudice.

[10] I note at this point that Plaintiffs sued Mr. Farleigh, Mr. Louszko, and Mr. Nelson in their official and individual capacities. Compl. ¶¶ 3-6.  Although not indicated, I assume Count III is brought against these defendants in their individual capacities, since a "suit against a governmental official in his or her official capacity is treated as a suit against the governmental entity itself."  A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 580 (3d Cir. 2004).

<u>A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.</u>, 372 F.3d 572, 586 (3d Cir. 2004)

(citations and internal quotation marks omitted); <u>see</u> <u>also</u> <u>Santiago v. Warminster Twp.</u>,

629 F.3d 121, 129 n.5 (3d Cir. 2010).  Any direction by Mr. Nelson must have been the

proximate cause of Mr. Romano's unconstitutional conduct.  <u>Santiago</u>, 629 F.3d at 130.

As indicated, Plaintiffs have plausibly alleged that various Township customs,

maintained in part by Mr. Nelson, Compl. ¶ 6, caused their injuries.  Accordingly, I will

not dismiss Plaintiffs' supervisory liability claims against Mr. Nelson at this time.  <u>A.M.</u>,

372 F.3d at 586.[11]

## C.     Count V

Plaintiffs in Count V allege they were deprived of "their state constitutional rights

in violation of Article 1, [Section] 1 of the Pennsylvania Constitution."[12]  Compl. ¶ 91.

Moving Defendants contend Count V must be dismissed because there is no private cause

of action for money damages under Article 1, Section 1.[13]  In <u>Jones v. City of</u>

<u>Philadelphia</u>, 890 A.2d 1188 (Pa. Commw. Ct. 2006), the Commonwealth Court declined

to create a cause of action for money damages under Article 1, Section 8.  <u>Id.</u> at 1216.

"[C]ourts in this District have extended the <u>Jones</u> reasoning to bar monetary claims under

Section 1 of Article I of the Pennsylvania Constitution."  <u>Collura v. City of Philadelphia</u>,

2:12-CV-4398, 2012 WL 6645532, at *6 (E.D. Pa. Dec. 21, 2012).  I find this case law

---

[11] I also decline to dismiss Plaintiffs' claim for punitive damages against Mr. Nelson in his individual capacity.

[12] Article 1, Section 1 provides that "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."

[13] Plaintiffs seek injunctive relief on their § 1983 claims, only.  Compl. at 25.

persuasive, as I have before.  Lopez v. Maczko, 2007 WL 2461709, at *6 (E.D. Pa.

Aug.16, 2007).  Count V is therefore dismissed with prejudice.

> **D.     Count VI**

Plaintiffs in Count VI allege state-created danger claims pursuant to § 1983.

Moving Defendants do not address this count in their briefs, although Plaintiffs spend

pages addressing it in their response.  Doc. No. 13-2 at 19-24.  Because Plaintiffs allege

they were harmed directly by the state, the state-created danger doctrine is inapplicable

and I will dismiss Count VI without prejudice.

As a general matter, the Due Process Clause does not "require[] the State to

protect the life, liberty, and property of its citizens against invasion by private actors."

DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989).  An

exception to this general rule is the state-created doctrine, which imposes liability where

the state, although not the direct cause of harm, "acts to *create* or *enhance* a danger that

deprives the plaintiff of his or her Fourteenth Amendment right to substantive due

process."  Sanford v. Stiles, 456 F.3d 298, 303-04 (3d Cir. 2006).  On the other hand,

where the state is alleged to have directly inflicted the harm, DeSchaney poses no barrier

and the state-created danger doctrine provides no vehicle to recovery, since the purpose

of the Due Process Clause is "to protect the people from the State."  489 U.S. at 196; e.g.,

Sanford v. Stiles, 456 F.3d 298, 307 n.8 (3d Cir. 2006) (noting that Ziccardi v. City of

Philadelphia, 288 F.3d 57 (3d Cir. 2002), "was not a 'state created danger' case . . .

[because] the plaintiff alleged that he was harmed directly by Philadelphia Fire

Department paramedics and the city"); see also Mark v. Borough of Hatboro, 51 F.3d

1137, 1150-51 (3d Cir. 1995); McComb v. Wambaugh, 934 F.2d 474, 478 (3d Cir. 1991);

Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 724 (3d Cir. 1989).

   The Tenth Circuit's decision in Gray v. Univ. of Colorado Hosp. Auth., 672 F.3d

909 (10th Cir. 2012), provides a good illustration of the doctrine's inapplicability where

the state is alleged to be "immediate or direct cause" of the harm.  Id. at 927.  In Gray, the

plaintiffs' decedent suffered a fatal seizure while left unattended in his hospital bed.  The

plaintiffs invoked the state-created danger doctrine and sought to hold liable various

doctors, nurses, and staff, all of whom they alleged acted under color of law.  In rejecting

the claim, the court explained that:

> The state-created danger theory indulges the legal fiction that an act of
> private violence may deprive the victim of [substantive due process]. . . .
> Courts simply need not indulge this legal fiction where a state actor, rather
> than a private individual, is directly responsible for causing the harm.  This
> is because the state actor directly responsible for the deprivation of life,
> liberty, or property may be held personally liable under § 1983.  Whether
> other state actors further down the chain of causation also may be liable
> poses separate questions of personal and/or supervisory liability.  The
> answers to these questions in no way depend on a legal fiction that declares
> an act of a private party necessary to effectuate a constitutional deprivation.

Id. at 927-28 (citations omitted).  Because the plaintiffs alleged that those responsible for

failing to monitor their decedent acted under color of law, "the state-created danger

theory of constitutional liability ha[d] no role to play in a proper resolution of [their]

grievance."  Id. at 930.

   Here, as in Ziccardi and Gray, the "immediate and direct cause" of harm was the

state, embodied by Mr. Romano, who is alleged to have "at all times relevant . . . act[ed] .

. . under color of state or municipal public law."  Compl. ¶ 3.  As indicated, Mr. Romano

did not move to dismiss, and Moving Defendants do not dispute that he (and they) acted under color of law.[14]  On the allegations and arguments before me, this is not a state-created danger case and I will dismiss Count VI without prejudice as a result.[15]

### E.    Count VIII

Although Township moves to dismiss Plaintiffs' claims in their entirety, it does not brief Count VIII, which seeks to hold Township liable under state law for Mr. Romano's negligence.  Count VIII implicates the Pennsylvania Political Subdivision Tort Claims Act, which provides that local agencies, such as Township, are generally immune from liability for their employees' tortious conduct.  42 Pa. Cons. Stat. Ann. § 8541.  It appears, however, that an exception may apply here.  Id. § 8542(b)(1) (imposing liability on a local agency for the negligent "operation of any motor vehicle in the possession or control of the local agency").  Because this issue was not briefed, I do not reach it at this time.

### F.    Mrs. Mintz's § 1983 Claim for Loss of Consortium

Moving Defendants contend loss-of-consortium claims are not cognizable under § 1983, and to the extent Mrs. Mintz brings such a claim, it should be dismissed.  The Third Circuit has not yet addressed whether a spouse may recover under § 1983 for loss of consortium, and the issue has split district courts in the circuit.  Compare Pahle v. Colebrookdale Twp., 227 F. Supp. 2d 361, 380-83 (E.D. Pa. 2002) (finding constitutional

---

[14] Despite this lack of opposition, Plaintiffs argue at length that Mr. Romano acted under color of law. Doc. No. 13-2 at 13-15.

[15] Although I am dismissing Count VI without prejudice, I note that to the extent Plaintiffs continue to pursue their allegation that Mr. Romano acted under color of law, their state-created danger claims are not viable.

liberty interest in consortium), with Norcross v. Town of Hammonton, CIV. 04-2536(RBK), 2006 WL 1995021, at *1-3 (D.N.J. July 13, 2006) (finding no constitutional liberty interest in consortium).  The dispute stems largely from the Third Circuit's decision in Estate of Bailey v. York Cnty., 768 F.2d 503 (3d Cir. 1985), overruled on other grounds by DeShaney v. Winnebago County Dept. of Soc. Serv., 489 U.S. 189 (1989), which held that a minor child's father had "a cognizable liberty interest in preserving the life and physical safety of his child from deprivations caused by state action," id. at 509 n.7.  Courts finding a liberty interest in consortium have concluded that Bailey's reasoning "logically extend[s] to spouses."  Pahle, 227 F. Supp. 2d at 382.  Plaintiffs urge me to follow suit.

I need not decide here whether a constitutional right to consortium exists, because even if one does, Mrs. Mintz's claim would fail.  The Third Circuit has made clear in decisions subsequent to Bailey that "only deliberate conduct implicates due process."  Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd Of Educ., 587 F.3d 176, 192 (3d Cir. 2009).  Although these statements were made in the context of parental, not spousal, liberty interests, id. at 191-92; McCurdy v. Dodd, 352 F.3d 820, 827-28 (3d Cir. 2003), the court relied on Daniels v. Williams, 474 U.S. 327 (1986), which made no distinction among liberty interests.  Id. at 331 ("Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property.").  "The requirement that executive conduct be deliberate in order to give rise to a due process violations," Chambers, 587 F.3d at 192, which is rooted in Daniels, applies equally to a spouse's liberty interest in consortium,

15

assuming one exists.  <u>Norcross</u>, 2006 WL 1995021, at *2 n.4.  Because the instant complaint contains no allegation of state action "specifically aimed at interfering with protected aspects" of the spousal relationship, <u>McCurdy</u>, 352 F.3d at 827-28, Mrs. Mintz's loss-of-consortium claim is dismissed without prejudice to the extent it is brought under § 1983.

## IV.   CONCLUSION

For the foregoing reasons, Count I is dismissed with prejudice in its entirety; Count II is dismissed with prejudice as to Moving Defendants; Count III is dismissed with prejudice as to Mr. Romano; Count IV is dismissed without prejudice insofar as it is premised on the existence of a municipal policy; Count IV is dismissed with prejudice insofar as it asserts a claim for punitive damages against Township; Counts II, III, and IV are dismissed without prejudice insofar as they are premised on violations of the Fourth Amendment; Count V is dismissed with prejudice in its entirety; Count VI is dismissed without prejudice in its entirety; and Mrs. Mintz's § 1983 claim for loss of consortium is dismissed without prejudice.  The remainder of the complaint survives.[16]

An appropriate order follows.

---

[16] As it currently stands, Plaintiffs' complaint includes the following counts: by Mr. Mintz, for deprivation of his Fourteenth Amendment right to substantive due process pursuant to § 1983, against Mr. Romano in his individual capacity (Count II); by Mr. Mintz, for supervisory liability pursuant to § 1983, against Mr. Farleigh, Mr. Louszko, and Mr. Nelson in their individual capacities (Count III); by Mr. Mintz, for municipal liability pursuant to § 1983, against Company and Township (Count IV); by Mr. Mintz, for state-law negligence, against Mr. Romano (Count VII); by Mr. Mintz, for state-law respondeat superior, against Company and Township (Count VIII); and by Mrs. Mintz, for state-law loss of consortium, against all defendants (Count IX).